IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GILLIAN FILYAW, individually and on behalf of all others similarly situated, | **4:24CV3108** |
| Plaintiff, | |
| vs. | **MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER** |
| STEVE CORSI, Chief Executive Officer of the Nebraska Department of Health and Human Services, in his official capacity; and MATT AHERN, Interim Director of the Division of Medicaid and Long-Term Care, in his official capacity, | |
| Defendants. | |

In this unhappy case, Plaintiff "requests [a temporary restraining order (TRO)] restraining the Defendants from enforcing the unlawful and unconstitutional termination of Plaintiff's Medicaid eligibility without adequate notice, and affirmatively ordering that Plaintiff be prospectively reinstated in Medicaid coverage until Defendants provide adequate notice which includes an adequate reason for her termination that comports with constitutional due process." Filing 4 at 1. Plaintiff makes clear that she seeks a TRO only on her own behalf, Filing 4 at 1, and not on behalf of the putative class she describes as "[t]hose who, since March 1, 2023, have been or will be issued a written notice from Defendants proposing to terminate their Nebraska Medicaid eligibility for the reason 'income exceeds standards.'" Filing 1 at 5 (¶ 21).

The Nebraska Department of Health and Human Services (NDHHS) is charged with administering finite resources to provide healthcare for over 390,000 people. Filing 28 at 1. The NDHHS must follow federal law and regulations when administering the Medicaid program.

1

NDHHS generally may not provide Medicaid benefits unless the law allows for such benefits, even if a particularly sympathetic case presents itself.

The question this Court faces on Plaintiff's motion for a TRO is not the ultimate legal question of whether benefits are required or should be required to be reinstated to the Plaintiff. Instead, the Court must decide if Plaintiff has met her burden to satisfy the specific and stringent requirements for the extraordinary relief of a TRO that would immediately require Defendants to provide the benefits Plaintiff seeks. Plaintiff has failed to meet that heavy burden.

The Court concludes that contrary to Plaintiff's assertions, Plaintiff is not likely to succeed on the merits of her claim that the notice of termination of her Medicaid benefits violated her due process rights as she must to obtain a TRO. First, because Plaintiff did not timely request a hearing on the termination of her benefits, she forfeited the right to a continuation of benefits during an administrative appeal. Consequently, she now seeks retroactive or retrospective relief from the Court to reinitiate her benefits and return her to the *status quo ante* the termination of her benefits rather than prospective relief to maintain a *status quo* of uninterrupted benefits. Such retroactive relief is unavailable under *Ex parte Young*, 209 U.S. 123 (1908), and thus violates sovereign immunity.

Furthermore, Plaintiff also is not likely to succeed on her claim because she has little likelihood of establishing the elements of her claim that the notice of termination she received violated due process. All the notices of agency action on her Medicaid benefits, including the notice of termination because she exceeded income standards, adequately identified the agency action and the applicable regulations, even including the address of a Nebraska government website to review those regulations. Each notice also advised her of her right to request a

conference to discuss the reasons for the action, the procedure to obtain an administrative appeal, and the continuation of her benefits if she appealed before the effective date of the termination of those benefits.

Plaintiff is also unable to establish irreparable harm as required to obtain a TRO, notwithstanding the possibly harsh consequences of termination of Medicaid benefits while she pursues her challenge to the termination. Plaintiff could have forestalled those consequences and ensured continuation of her benefits by filing an administrative appeal before the effective termination date, but she did not do so. It is settled law that an unreasonable delay in moving for a temporary restraining order undermines a showing of irreparable harm sufficiently to deny the motion. Plaintiff's delay was unreasonable where she had the opportunity to obtain the relief that she seeks by filing a timely administrative appeal but did not do so. While she may still pursue administrative challenges to the termination of benefits, she is not entitled to a continuation of benefits while doing so. Furthermore, Plaintiff cannot show that she is irreparably harmed by an inadequate notice that prevented her from mounting a challenge to an allegedly improper termination of benefits where the Court finds that she had notice that complied with due process.

Finally, balancing the interests at stake, including the harms each party may suffer if a TRO is granted or denied and the public interest, nothing changes the balance in favor of denying a TRO when both likelihood of success and irreparable harm are lacking. The claimed public interest in continuing Medicaid benefits for as many people as possible with finite resources and avoiding the costs that might be incurred by violating state and federal requirements for the Medicaid program weigh against a TRO.

3

Thus, after reviewing written submissions by both Plaintiff and Defendants, and for the reasons explained in more detail below, the Court concludes that extraordinary relief is not warranted. Consequently, Plaintiff's Motion for a Temporary Restraining Order is denied.

## I.   INTRODUCTION

### A.  Factual Background

The Court begins its full explanation of the reasons for its ruling with a statement of the factual background drawn from the parties' submissions. The Court hastens to add that findings of fact in a ruling on a motion for a TRO or a preliminary injunction are necessarily "preliminary" or "provisional" and are not binding in subsequent proceedings.[1]

Plaintiff Gillian Filyaw is 23 years old. Filing 8 at 2 (¶ 2). She resides in North Platte, Nebraska, with her husband and two children aged three years and one-and-a-half years, respectively. Filing 8 at 2 (¶ 3). She is a "stay-at-home mom" who provides full-time care for her children, while her husband is the sole source of household income. Filing 8 at 2 (¶ 4). Her husband's work hours and income vary week-to-week and season-to-season, ranging between $800 to $1,000 gross weekly in recent weeks. Filing 8 at 2 (¶ 4). Filyaw believes that she enrolled in Nebraska Medicaid coverage in October or November of 2020, when she discovered that she was pregnant with her first child, and that she was continuously enrolled until May 1, 2024. Filing 8 at 3 (¶¶ 5–6).

---

[1] *See U.S. Sec. & Exch. Comm'n v. Zahareas*, 272 F.3d 1102, 1105 (8th Cir. 2001) ("[W]e have long held that 'findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding.'" (quoting *Patterson v. Masem*, 774 F.2d 251, 254 (8th Cir. 1985))); *Campaign for Fam. Farms v. Glickman*, 200 F.3d 1180, 1186 (8th Cir. 2000) ("[T]he district court's findings of fact and conclusions of law on an application for a preliminary injunction are 'tentative and provisional, in the sense that different findings . . . might be warranted after a trial on the merits.'" (quoting *Independent Fed. of Flight Attendants v. Trans World Airlines, Inc.*, 655 F.2d 155, 159 (8th Cir. 1981), and also citing *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981))).

4

During her enrollment, Filyaw relied on Medicaid health coverage to address multiple serious health events, including her pregnancies and the births of her children. Filing 8 at 4 (¶ 15). However, after her Medicaid coverage was terminated effective May 1, 2024, Filyaw canceled or delayed care because she could not afford it without health coverage. Filing 8 at 4 (¶ 16). Filyaw also discovered on May 5, 2024, that she is pregnant, despite a procedure that was supposed to prevent pregnancy, raising concerns that the pregnancy is ectopic. Filing 8 at 4–5 (¶ 17). Filyaw also believes that she has suffered pregnancy-related problems, but she has not sought medical attention because of the termination of her Medicaid coverage. Filing 8 at 5 (¶¶ 18–19). She lists various other continuing health problems for which she has not been able to pursue treatment or, if she has received treatment, she cannot pay for it. Filing 8 at 5–8 (¶¶ 20–46).

Defendants' evidence shows that Filyaw's Medicaid history is somewhat more complex than a single application and continuous benefits until termination effective May 1, 2024. Perhaps more importantly, it shows that Filyaw was repeatedly advised of the requirements for eligibility for Medicaid benefits.

Specifically, Filyaw applied for Medicaid in 2019 but was denied effective November 1, 2019. Filing 27-8 at 4 (¶ 16). The Notice stated the reason to be that Filyaw was "Not Disabled or Blind," and included the following comment, "At this time the State of NE does not have medical programs for adults ages 19-64 who have not been determined disabled or blind by Social Security, those who are not pregnant or do not have children under the age of 19 residing with them. If you feel you are disabled please apply for disability and SSI benefits with Social Security." Filing 27-1 at 1 (11/6/2019 Notice of Action). Filyaw applied for Medicaid again in

2020 and was deemed not eligible effective August 1, 2020, because "Eligibility Requirements Not Met," but she was deemed eligible beginning September 1, 2020, due to pregnancy. Filing 27-8 at 4 (¶ 18); Filing 27-2 (12/1/2020 Notice of Action). Defendants represent and Filyaw does not dispute that her benefits remained open from September 1, 2020, until January 17, 2022, and she remained eligible during that time under normal program rules for pregnant women, parent caretakers, or transitional medical assistance, not based on the COVID-19 Public Health Emergency. Filing 27-8 at 5 (¶ 20). Critically, each of these Notices of Action identified the applicable provisions of the Nebraska Administrative Code (NAC) and the website where they could be found (ACCESSNebraska.ne.gov),[2] as well as Filyaw's right to an "adequate" notice of action, and her rights to pursue administrative appeals with continuing benefits if the appeal was made before the effective date of the action.

Filyaw was sent a letter dated January 17, 2022, informing her that she had been determined to be ineligible because her annual renewal had not been completed. Filing 27-8 at 5 (¶ 21); Filing 27-3 at 1. However, the letter stated,

> [D]ue to the federal guidance related to the current State of Emergency due to the COVID-19 pandemic, your Medicaid case will remain open and your renewal is being extended six months. Once the State of Emergency has been lifted, your eligibility will be reviewed.

Filing 27-3 at 1. Filyaw was sent another Notice of Action dated May 25, 2022. Filing 27-8 at 5–6 (¶ 22). That Notice stated that Filyaw and one of her children were eligible for benefits and that Filyaw and her other child were eligible for transitional medical coverage effective June 1, 2022. Filing 27-4 at 1. Filyaw's Medicaid benefits remained open from May 25, 2022, until

---

[2] The November 6, 2019, Notice identifies "477 NAC 1-000 Disabled definition and 477. NAC 27-001.04 Blindness or Disability Determination," Filing 27-1 at 1, and the December 1, 2020, Notice identifies 477 NAC 2-001, 477 NAC 2-000, and 14-000 to 19-000, Filing 27-2 at 1–2.

March 13, 2023, under normal program rules and not solely based on the Public Health Emergency. Filing 27-8 at 6 (¶ 24). On March 13, 2023, Filyaw was sent another Notice of Action indicating that she remained "eligible." Filing 27-8 at 6 (¶ 25); Filing 27-5 (3/13/23 Notice of Action). This Notice stated in the Comments,

> Your Medicaid case has been updated [and you] has been determined to be ineligible at this time, (Income Exceeds Program Income Level) however due to federal guidance related to the current State of Emergency due to the COVID-19 pandemic, your Medicaid case will remain open. Once the State of Emergency has been lifted, your eligibility will be re-determined. . . .

Filing 27-5 at 2. Thus, over a year prior to the notice giving rise to Filyaw's lawsuit, Filyaw had been informed that her "Income Exceeds Program Income Level." With the exception of the January 17, 2022, Notice, Filing 27-3, each of these Notices of Action identified the applicable provisions of the Nebraska Administrative Code (NAC) and the website where they could be found (ACCESSNebraska.ne.gov),[3] and all three notices informed Filyaw of her right to an "adequate" notice of action, and her rights to pursue administrative appeals with continuing benefits if the appeal was made before the effective date of the action.

Filyaw's Medicaid file was reviewed again in 2024 as the result of the end of the Public Health Emergency period. Filing 27-8 at 6 (¶ 26). Defendants explain the calculation of Filyaw's income ineligibility in the April 2024 review as follows:

> Based on the sources available to [the NDHHS Division of Medicaid and Long-Term Care (MLTC)], Plaintiff[']s average monthly income was computed to be $4003.65. This was calculated based on pay information from weekly checks on April 12 ($806), April 5 ($710.33), March 29 ($993.50), and March 22 ($1214.50). In order to calculate the average income, the four checks are totaled, and the result is divided by 4. That result is then multiplied by 4.3, on account of there being 4.3 weeks per month. 5% of the income was removed because of the

---

[3] The May 25, 2022, Notice identified 477 NAC 27-008.01 and 27-008.07C, and 477 NAC 3-007, Filing 27-4 at 2, and the March 13, 2023, Notice identified 477 NAC 3-007, Filing 27-5.

> required income disregard, giving a net countable income of $3873.65. As the allowable income for Medicaid with a four-person household is $3458, Plaintiff was found income ineligible.

Filing 27-8 at 7 (¶ 27). A regulation cited in some of the Notices sent to Filyaw, 477 NAC 3-007, sets out the requirements for redeterminations every 12 months, and explains in part, "A renewal of modified adjusted gross income (MAGI)-based eligibility shall be completed on the basis of information available to the Department without requiring information from the individual. Information will only be required from the individual when not available through other sources." One of the provisions cited in the December 1, 2020, Notice, Filing 27-2 at 1–2, 477 NAC 2-001, sets out "primary eligibility requirements," including "12. Income (see Appendix 477-000-012)." Appendix 477-000-012 sets out the calculation and dollar income limits for Modified Adjusted Gross Income (MAGI) based programs and Transitional Medical Assistance. It indicates that for a household of four, the Heritage Health Adult plan allows 133% of the Federal Poverty Level, or $3,458 monthly income. 477 NAC, Appendix 477-000-012.

Because her income exceeded the limit for eligibility, Filyaw received a Notice of Action from the NDHHS dated April 18, 2024, that stated as follows:

**Close**
**Medical coverage for the following individual(s) has ended effective 05-01-2024.**

| Individual | Status | Reason |
| --- | --- | --- |
| GILLIAN AJ FILYAW | Ineligible | Income Exceeds Standards |

Filing 6-1 at 2; *see also* Filing 27-6 at 1 (another copy). Filyaw avers that after carefully reviewing the Notice and making three calls to NDHHS in May 2024, she is not certain why she no longer qualifies for Medicaid, what the applicable income limits are, or how her household

income was calculated. Filing 8 at 3 (¶¶ 9–10). She avers that other efforts to determine why her benefits were terminated have been unsuccessful. Filing 8 at 4 (¶¶ 11–13).

## B. Procedural Background

Filyaw filed her Complaint in this case on June 11, 2024, on behalf of herself and a proposed class of Nebraskans whose enrollment in Nebraska's Medicaid program will be terminated by the NDHHS on the basis of their income but whose notices did not comply with due process. Filing 1 at 1 (¶ 2). Defendants are Steve Corsi, the Chief Executive Officer of the NDHHS, and Matt Ahern, the Interim Director of the Division of Medicaid and Long-Term Care (MLTC) of the NDHHS, both in their official capacities. Filing 1 at 4 (¶¶ 13–14). Filyaw asserts a claim pursuant to 42 U.S.C. § 1983 alleging that Defendants violated her rights and the rights of the proposed class members to due process as guaranteed by the Fourteenth Amendment to the United States Constitution. Filing 1 at 12–13 (¶¶ 64–70). Somewhat more specifically, Filyaw alleges,

> Defendants have deprived, and continue to deprive, Plaintiff and the proposed class of due process in violation of the Fourteenth Amendment by issuing the Income Termination Notices to Plaintiff and the proposed class, creating a risk of erroneous deprivation of Medicaid coverage and failing to provide timely, adequate notice of the basis for the agency's decision.

Filing 1 at 12 (¶ 66).

Filyaw asks the Court to enter a judgment in her favor and in favor of the proposed class that will do the following:

> a) Certify this action as a class action under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure with respect to the proposed class identified herein;

> b) Pursuant to 42 U.S.C. § 1983 declare that the Income Termination Notices used by Defendants do not satisfy the requirements of due process and are therefore unconstitutional;

9

    c)     Preliminarily and permanently enjoin Defendants from enforcing unconstitutional and unlawful Medicaid terminations per Income Termination Notices by affirmatively ordering that Defendants prospectively reinstate the property interests in Medicaid coverage of Plaintiff and proposed class until Defendants provide the enrollees an adequate termination notice that satisfies the requirements of constitutional due process, including setting forth the specific reasons why termination is proposed;

    d)     Preliminarily and permanently enjoin Defendants from terminating Medicaid coverage for future members of the proposed class without first providing the enrollee a termination notice that satisfies the requirements of due process, including setting forth the specific reasons why termination is proposed;

    e)     Award the Plaintiff litigation costs and reasonable attorneys' fees, as provided for by 42 U.S.C. § 1988;

    f)     Waive the requirement for the posting of a bond as security for the entry of relief;

    g)     Set a time and place for hearings on the motions to be filed by Plaintiff and notice be given to all persons entitled thereto as provided by law;

    h)     Set the place of trial of this case as Lincoln, Nebraska; and

    i)     Order such other and further relief as the Court may deem just and proper.

Filing 1 at 15–15 (Request for Relief).

Also on June 11, 2024, Filyaw filed the Motion for Temporary Restraining Order now before the Court. Filing 4. Filyaw incorporates into her Motion the allegations in her Complaint and requests a TRO "restraining the Defendants from enforcing the unlawful and unconstitutional termination of Plaintiff's Medicaid eligibility without adequate notice, and affirmatively ordering that Plaintiff be prospectively reinstated in Medicaid coverage until Defendants provide adequate notice which includes an adequate reason for her termination that

comports with constitutional due process." Filing 4 at 1. In her Motion, Filyaw asks the Court to do the following:

> 1.   Order the Defendants to cease enforcement of the unlawful and unconstitutional termination of Plaintiff's Medicaid eligibility by prospectively reinstating her in Medicaid coverage until such time that the Defendants provide her with an adequate termination notice that comports with constitutional due process or until a hearing on Plaintiff's forthcoming motion for a preliminary injunction may take place.
>
> 2.   Issue the temporary restraining order ex parte as soon as is practicable, or, in the alternative, schedule a hearing on this motion as soon as practicable, at the Court's convenience on or before June 14, 2024; and
>
> 3.   Waive the bond required by Rule 65(c).

Filing 4 at 4 (Wherefore clause).

In her Motion, Filyaw also states *inter alia*:

> 14.   Plaintiff's attorneys certify that upon filing this motion, Plaintiff's attorneys will contact Defendants' counsel, the Nebraska Attorney General on June 11, 2024 to inform them that Plaintiff's counsel filed this motion for temporary restraining order against Defendants. The Nebraska Attorney General's office can be reached at 402-471-2683. Plaintiff has no objection to a conference or hearing as soon as practicable on this motion.
>
> 15.   If such a conference or hearing is not possible or unnecessary, Plaintiff requests that this Court issue a temporary restraining order as soon as practicable without further notice to the Defendants because, unless such an order is issued, Plaintiff will continue to suffer immediate and irreparable harm.

Filing 4 at 4 (¶¶ 14–15).

In an Order submitted for filing on June 12, 2024, at the close of the business day but not filed by the Clerk's Office until early on June 13, 2024, the Court stated that, after reviewing Filyaw's Complaint, Motion for Temporary Restraining Order, supporting brief, and index,

Filyaw's Motion for Temporary Restraining Order could be resolved on written submissions without a conference or hearing. Filing 21 at 2. However, the Court stated that it would not resolve the Motion without a written response filed by Defendants. Filing 21 at 2. Accordingly, the Court ordered that the Motion would be resolved on written submissions, but provided a deadline of 12:00 p.m. CDT on Tuesday, June 18, 2024, for any party who believed that the presentation of a witness or witnesses, either by videoconference or by live testimony, was required to file a motion requesting an evidentiary hearing and demonstrating good cause for presentation of the witness or witnesses. Filing 21 at 2. The Court also set a deadline of 12:00 p.m. CDT on Tuesday, June 18, 2024, for Defendants to file an opposition or other response to Plaintiffs' Motion with an index of any evidence or affidavits on which Defendants wished to rely. Filing 21 at 2. The Court's Order also set a deadline for Filyaw to serve a copy of the Order with her Motion on Defendants, and if such timely service did not occur the deadline for Defendants' response would be extended. Filing 21 at 2–3. However, the Order also stated that no extension would be made if Defendants were served with the summons or agreed to appear voluntarily prior to the deadline for Filyaw to serve the Order. Filing 21 at 2–3.

In fact, the filing of that Order on June 13, 2024, crossed with the Defendants' filing of appearances of counsel after the close of regular business on June 12, 2024. Filing 19; Filing 20. Thus, the deadline for Defendants' response remained June 18, 2024, at noon. No timely request for presentation of witnesses was filed by either Filyaw or Defendants. Defendants filed a joint index of evidence, Filing 27, and a joint Opposition Brief to Filyaw's Motion for Temporary Restraining Order, Filing 28, by the deadline on June 18, 2024.

This matter is now fully submitted on written submissions.

## II. LEGAL ANALYSIS

### A. Temporary Restraining Order Standards

Rule 65 of the Federal Rules of Civil Procedure provides, in pertinent part, "The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney." Fed. R. Civ. P. 65(b)(1). Rule 65(b) imposes significant requirements for a TRO issued without notice. Fed. R. Civ. P. 65(b)(1)–(3); *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 665 (8th Cir. 2022) (noting that there is a material difference between a TRO and a preliminary injunction in the allowed duration and the requirement of notice). In this case, however, Defendants had notice of Filyaw's request for a TRO, counsel for Defendants entered their appearances, and the Court required Defendants to respond to the request for a TRO before the Court would rule on it. Even so, if the Court were ordering that a TRO issue in this instance, any TRO would be subject to the durational limits of Rule 65(b)(2). Fed. R. Civ. P. 65(b)(2) (a temporary restraining order issued without notice "expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension").

Rule 65(b) does not identify the standards that the Court must apply in deciding whether to grant a request for a TRO. *See generally* Fed. R. Evid. 65(b). However, the Eighth Circuit Court of Appeals has filled the gap by explaining that "the standard for analyzing a motion for a temporary restraining order is the same as [the standard for] a motion for a preliminary injunction." *Tumey*, 27 F.4th at 665. Thus, to obtain either a TRO or a preliminary injunction, "'[a] plaintiff . . . must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips

13

in his favor, and [4] that an injunction is in the public interest.'" *Tumey*, 27 F.4th at 664 (bracketed numbers inserted) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), and also citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)); *see also Wilbur-Ellis Co., LLC v. Erikson*, No. 23-2563, 2024 WL 2857473, at *2 (8th Cir. June 6, 2024) ("The court considers four factors when reviewing a district court's grant of a preliminary injunction: '(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that the movant will succeed on the merits; and (4) the public interest.'" (quoting *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013), in turn quoting *Dataphase Sys.*, 640 F.2d at 113)).[4] No single factor is determinative or dispositive. *Wilber-Ellis Co.*, 2024 WL 2857473, at *2; *Cigna Corp. v. Bricker*, No. 23-2455, 2024 WL 2839930, at *2 (8th Cir. June 5, 2024). Thus, "the court should balance all the factors in considering whether the injunction should be granted." *Ng v. Bd. of Regents of Univ. of Minnesota*, 64 F.4th 992, 997 (8th Cir. 2023).

The pertinent factors must be considered in the context of certain over-arching principles. First, "[a] preliminary injunction [or TRO] is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. 7, 24 (2008); *Cigna Corp.*, 2024 WL 2839930, at *2 (quoting *Winter*,

---

[4] Courts in this Circuit have for decades called the considerations for determining whether to grant a TRO or a preliminary injunction the "*Dataphase* factors," set out in *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109 (8th Cir. 1981) (en banc). The much more recent statements of the pertinent factors by the Supreme Court in *Winter*, as quoted in *Tumey*, while identifying the same considerations, give them sufficiently different definition to warrant reference to the "*Winter* factors" rather than the "*Dataphase* factors." *Compare Winter*, 555 U.S. at 20 (as quoted in the body of this decision), *with Dataphase*, 640 F.2d at 114 (as quoted in *Wilbur-Ellis Co.*). However, even since *Winter*, the Eighth Circuit Court of Appeals has generally persisted in relying on the pertinent factors from *Dataphase. See, e.g.*, *Wilbur-Ellis Co.*, 2024 WL 2857473, at *2; *Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 668 (8th Cir. 2023); *but see Cigna Corp. v. Bricker*, No. 23-2455, 2024 WL 2839930, at *2 (8th Cir. June 5, 2024) (quoting the factors from *Winter*, 555 U.S. at 20, then citing *Dataphase Sys.*, 640 F.2d at 114, for the "same factors," and referring to the "*Winter/Dataphase* factors").

555 U.S. at 24); *Tumey*, 27 F.4th at 665. Because it is an extraordinary remedy, "the party seeking a preliminary injunction bears the burden of establishing the necessity of the remedy." *Lindell v. United States*, 82 F.4th 614, 618 (8th Cir. 2023) (citing *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 316 (8th Cir. 2009)), *cert. denied*, 144 S. Ct. 1350 (2024). Second, the "primary function" of a TRO or preliminary injunction "is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." *Cigna Corp.*, 2024 WL 2839930, at *2 (quoting *Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984)); *Wilbur-Ellis Co.*, 2024 WL 2857473, at *2 ("The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." (quoting *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789–90 (8th Cir. 1989), in turn quoting *Ferry-Morse Seed Co.*, 729 F.2d at 593)). To put it another way, the purpose of preliminary injunctive relief "is not to give the movant the ultimate relief he seeks." *Lindell*, 82 F.4th at 618. Indeed, "[r]equiring [the defendant] to take affirmative action . . . before th[e] issue has been decided on the merits goes beyond the purpose of a preliminary injunction." *Tumey*, 27 F.4th at 665 (quoting *Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993)).

The Court turns to consideration of the *Winter*/*Dataphase* factors in this case in the context of these guiding principles.

## B.  Application of the Standards

### 1.  *Likelihood of Success on the Merits*

"While no single factor is determinative, the probability of success factor is the most significant." *Wilbur-Ellis Co.*, 2024 WL 2857473, at *2 (internal quotation marks omitted);

*Tumey*, 27 F.4th at 665. Thus, the movant's likelihood of success must be properly determined and then weighed against the other relevant factors. *Wilbur-Ellis Co.*, 2024 WL 2857473, at *4. The Court begins its consideration of this factor with a summary of the parties' arguments.

        a.   The Parties' Arguments

Filyaw argues that she is likely to succeed on the merits because Defendants failed to provide an adequate termination notice setting out sufficient reasons for the decision to satisfy due process. Filing 5 at 11. She argues that adequate notice lies at the heart of due process. Filing 5 at 12. Indeed, Filyaw argues that in public assistance cases, timely and adequate notice requires a detailing of the reasons for the termination of benefits so that the enrollee has an effective opportunity to challenge the proposed termination. Filing 5 at 12. She argues that without such notice, she cannot demonstrate that the decision is incorrect, based on misleading factual premises, or based on misapplication of rules or policies to the facts. Filing 5 at 12. More specifically, Filyaw argues adequate notice must state in plain terms why benefits are being reduced or terminated, explain the methodology used, and be reasonably specific about her health conditions and the reduction of benefits. Filing 5 at 14. She contends that the required specificity is "grossly absent" from the Notice of Action that she received. Filing 5 at 14.

Defendants counter that Filyaw is unlikely to succeed on the merits for two reasons. Filing 28 at 3. First, they argue that they are entitled to sovereign immunity because Filyaw seeks retroactive relief that cannot be pursued under *Ex parte Young*, 209 U.S. 123 (1908). Filing 28 at 3. Specifically, they point out that Filyaw was ineligible for Medicaid benefits on May 1, 2024, so when she filed her Complaint and her Motion for a Temporary Restraining Order, the *status quo* was that she was entitled to no benefits; consequently, Filyaw is now seeking retroactive

relief to return to the *status quo ante* the termination of her benefits. Filing 28 at 4. Defendants contends that in contrast, the *Ex parte Young* exception to sovereign immunity only applies when a plaintiff is seeking prospective injunctive relief, not when a plaintiff is seeking reinstatement of benefits for which the plaintiff no longer qualifies including coverage for medical expenses incurred after her eligibility expired. Filing 28 at 4–5. Second, Defendants argue that Filyaw is unlikely to succeed on the merits because she received notice consistent with due process. Filing 28 at 6. Defendants assert that 42 C.F.R. § 431.210 and 42 C.F.R. § 435.917(b) provides the standard for timely and adequate notice of termination of Medicare coverage but those requirements were all met. Filing 28 at 6. As to the requirement that the notice provide a statement of the reason for the action, which Filyaw specifically challenges, Defendants argue that Filyaw conflates her preferred means of access to information with her ability to access information, but the notices she received identified the pertinent regulations and sources of information. Filing 28 at 6–7. Defendants argue that there was no requirement that the state provide her with individualized reasons for discontinuation of her benefits. Filing 28 at 9.

  b.  Requirements to Show Likelihood of Success on Filyaw's Due Process Claim

   The "likelihood of success" factor requires the movant to demonstrate "at least a 'fair chance of prevailing.'" *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 593 (8th Cir. 2022) (quoting *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1041 (8th Cir. 2016)). Still more specifically, "[a] movant shows a likelihood of success on the merits when it demonstrates a 'fair chance,' not necessarily 'greater than fifty percent,' that it will ultimately prevail under applicable law." *Cigna Corp.*, 2024 WL 2839930, at *2 (quoting *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 690 (8th Cir. 2003)). As

indicated above, Defendants challenge Filyaw's likelihood of success on two grounds, which the Court will consider in turn.

      c.   **Filyaw Has Not Shown Sufficient Likelihood of Success to Warrant a TRO**

          i.   **Filyaw Seeks Retroactive Relief Barred by Sovereign Immunity**

In this case, Filyaw's likelihood of success depends first upon her ability to sue state officials in their official capacities for the declaratory and injunctive relief she seeks. In an action against a state official in his or her official capacity, "the state is the real, substantial party in interest." *EEE Mins., LLC v. State of N. Dakota*, 81 F.4th 809, 815 (8th Cir. 2023) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984), and also citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), *cert. denied sub nom. EEE Mins., LLC v. North Dakota*, 144 S. Ct. 1097 (2024). The states retain their Eleventh Amendment sovereign immunity, however. *Id.* The Supreme Court's decision in *Ex parte Young*, 209 U.S. 123 (1908), provides a limited exception to such sovereign immunity for a suit for prospective equitable relief. *Id.* at 816; *Johnson v. Griffin*, 69 F.4th 506, 512 (8th Cir. 2023) ("[U]nder the exception to Eleventh Amendment immunity established in *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), 'a private party may sue state officials in their official capacities for prospective injunctive relief.'" (quoting *McDaniel v. Precythe*, 897 F.3d 946, 951–52 (8th Cir. 2018)). In contrast, the *Ex parte Young* exception does not apply to actions for "retrospective" declaratory relief, that is, seeking a declaration that past actions violated the plaintiff's rights. *Just. Network Inc. v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019). Similarly, the Eleventh Amendment bars "retroactive" injunctive relief that requires payment of funds from a state

18

treasury for a past violation of federal rights, such as refunds of monies collected by the state in violation of federal law. *Skelton v. Henry*, 390 F.3d 614, 617–18 (8th Cir. 2004).

The first fatal flaw to Filyaw's likelihood of success on the merits is that the Defendants sued in their official capacity have sovereign immunity to the TRO she requests because Filyaw seeks only "retroactive" or "retrospective" relief. In her Motion, Filyaw asks the Court to do the following:

> Order the Defendants to cease enforcement of the unlawful and unconstitutional termination of Plaintiff's Medicaid eligibility by prospectively reinstating her in Medicaid coverage until such time that the Defendants provide her with an adequate termination notice that comports with constitutional due process or until a hearing on Plaintiff's forthcoming motion for a preliminary injunction may take place.

Filing 4 at 4 (Wherefore clause). However, Filyaw's eligibility for Medicaid benefits expired on May 1, 2024. Filing 6-1; Filing 27-1. There is no "enforcement" of that termination to enjoin; it has occurred. Thus, Filyaw is seeking a retroactive or retrospective declaration that the past action of termination of her benefits violated her federal due process rights, which is outside of the *Ex parte Young* exception. *See Just. Network Inc.*, 931 F.3d at 764.

Filyaw attempts to characterize the relief requested as "affirmatively ordering that Plaintiff be prospectively reinstated in Medicaid coverage until Defendants provide adequate notice which includes an adequate reason for her termination that comports with constitutional due process." Filing 4 at 1. Notwithstanding that characterization, Filyaw actually seeks "retroactive" relief for a past termination by "reinstating her in Medicaid coverage" until the NDHHS gives her a "redo" with adequate notice of termination. Filing 4 at 4. If the Court ordered the relief requested, the state would be required to make "payment of funds" in the form

19

of Medicaid coverage for a past action of termination. That is not relief within the scope of the *Ex parte Young* exception to sovereign immunity. *See Skelton*, 390 F.3d at 617–18.

Indeed, the relief that Filyaw seeks would be improper in a temporary restraining order or preliminary injunction, even apart from sovereign immunity. Filyaw seeks "affirmative" action by Defendants, restoring benefits and redoing notice, rather than maintaining the existing *status quo* where Filyaw's eligibility for benefits expired without the filing of an administrative appeal. *See Tumey*, 27 F.4th at 665 ("Requiring [the defendant] to take affirmative action . . . before th[e] issue has been decided on the merits goes beyond the purpose of a preliminary injunction."); *Cigna Corp.*, 2024 WL 2839930, at *2 (explaining that the "primary function" of a TRO or preliminary injunction "is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." (citation omitted)).

For this reason alone, Filyaw fails to show sufficient likelihood of success to warrant a temporary restraining order.

### ii. Filyaw Received Adequate Notice

The likelihood of success is usually considered in light of the elements of the movant's claim or claims. See, e.g., *Wilbur-Ellis Co.*, 2024 WL 2857473, at *2 (considering likelihood of success on the plaintiff's breach-of-contract claim); 301, 712, 2103 & 3151 *LLC v. City of Minneapolis*, 27 F.4th 1377, 1383 (8th Cir. 2022) (analyzing likelihood of success in light of the elements of the movant's "takings" claim). Thus, the Court will consider the elements of Filyaw's claim of violation of her due process rights.

In *Elder v. Gillespie*, 54 F.4th 1055 (8th Cir. 2022), the Eighth Circuit Court of Appeals considered claims of due process violations in a case involving reduction or termination of in-

home care services for beneficiaries of the Arkansas Medicaid program based on inadequate notice. 54 F.4th at 1059–60. The Eighth Circuit explained,

> "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake. Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." *Gordon v. Hansen*, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam) (citation omitted). "Adequate notice is integral to the due process right to a fair hearing, for the 'right to be heard has little reality or worth unless one is informed.'" *Bliek v. Palmer*, 102 F.3d 1472, 1475 (8th Cir. 1997).

*Elder*, 54 F.4th at 1064.

As to the first step, "The Supreme Court has held that a person receiving benefits has a property interest in the continued receipt of the benefits." *Hepp v. Astrue*, 511 F.3d 798, 804 n.5 (8th Cir. 2008) (citing *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976)); *see also Elder v. Gillespie*, No. 3:19-CV-00155 KGB, 2021 WL 1226671, at *15 (E.D. Ark. Mar. 31, 2021) ("Plaintiffs have a property interest in continuing receipt of their Medicaid benefits." (citing *Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Servs.*, 364 F.3d 925, 930 (8th Cir. 2004)), *aff'd*, 54 F.4th 1055 (8th Cir. 2022). In *Elder*, the Eighth Circuit Court of Appeals concluded in part that "beneficiaries [of state Medicaid benefits] have a clearly established right to be provided adequate notice of reduction, loss, or termination of benefits." 54 F.4th at 1065. As to the second prong, the Eighth Circuit held in *Elder* that the plaintiff had adequately alleged that the state agency had provided insufficient notice of the reasons for the reduction in services, thus hampering the beneficiaries' ability to counter the agency's reasons and failed to inform them of the steps to take to continue receiving the same level of benefits. *Id*. at 1064. However, *Elder* involved the question of whether the beneficiaries had adequate pleaded the inadequacy of

notice, not whether the beneficiaries were sufficiently likely to succeed on their claims to warrant a TRO.

Filyaw's efforts to show likelihood of success on the merits of her due process claim are unavailing, notwithstanding that she has adequately pleaded that she has a property interest in continuing Medicaid Benefits. *Elder*, 54 F.4th at 1065 ("[B]eneficiaries [of state Medicaid benefits] have a clearly established right to be provided adequate notice of reduction, loss, or termination of benefits."); *Hepp*, 511 F.3d at 804 n.5 ("The Supreme Court has held that a person receiving benefits has a property interest in the continued receipt of the benefits." (citing *Mathews*, 424 U.S. at 332)). Filyaw has little chance—in the Court's view, well below fifty percent—of prevailing on her claim that the notice of termination of her Medicaid benefits violated due process. *See Wildhawk Invs.*, 27 F.4th at 593 (explaining that to obtain a temporary restraining order or a preliminary injunction, the claimant must have "at least a fair chance of prevailing"); *see also Cigna Corp.*, 2024 WL 2839930, at *2 (explaining that a "fair chance" is "not necessarily greater than fifty percent").

As Defendants point out, the federal regulation establishing the requirements for notice of agency action for Medicaid provides as follows:

> (a) Notice of determinations. Consistent with §§ 431.206 through 431.214 of this chapter, the agency must provide all applicants and beneficiaries with timely and adequate written notice of any decision affecting their eligibility, including an approval, denial, termination or suspension of eligibility, or a denial or change in benefits and services. Such notice must—
>
> (1)    Be written in plain language;
>
> (2)    Be accessible to persons who are limited English proficient and individuals with disabilities, consistent with § 435.905(b), and
>
> (3)    If provided in electronic format, comply with § 435.918(b).

(b) Content of notice—

\* \* \*

(2)     Notice of adverse action. Notice of adverse action including denial, termination, or suspension of eligibility or change in benefits or services. Any notice of denial, termination, or suspension of Medicaid eligibility, or, in the case of beneficiaries receiving medical assistance, denial of or change in benefits or services must be consistent with § 431.210 of this chapter.

42 C.F.R. § 435.917(a)–(b). 42 C.F.R. § 431.210 in turn provides as follows:

A notice required under § 431.206(c)(2), (c)(3), or (c)(4) of this subpart must contain—

(a) A statement of what action the agency, skilled nursing facility, or nursing facility intends to take and the effective date of such action;

(b) A clear statement of the specific reasons supporting the intended action;

(c) The specific regulations that support, or the change in Federal or State law that requires, the action;

(d) An explanation of—

(1)     The individual's right to request a local evidentiary hearing if one is available, or a State agency hearing; or

(2)     In cases of an action based on a change in law, the circumstances under which a hearing will be granted; and

(e) An explanation of the circumstances under which Medicaid is continued if a hearing is requested.

42 C.F.R. § 431.210.

Filyaw's assertion that the April 18, 2024, Notice was inadequate is undermined by the Notice itself. The April 18, 2024, Notice clearly stated that Filyaw Medicaid benefits would be terminated effective May 1, 2024, and clearly stated the reason to be "Income Exceeds Standards," thus complying with 42 C.F.R. § 431.210(a) and (b). Filing 27-6 at 1. It then clearly identified "[t]he specific regulations that support, or the change in Federal or State law that

23

requires, the action," as required by 42 C.F.R. § 431.210(c). Specifically, the April 18, 2024, Notice states the regulations on which it is based, specifically "477 NAC 16-001.01 to 16-001.14[,] 477 NAC 29-002.01, [and] 477 NAC 3-007," and that these regulations "can be found online at: ACCESSNebraska.ne.gov." Filing 6-1 at 3; Filing 27-6 at 2.

As Defendants explain, and a review of the pertinent regulations indicates, 477 NAC 16-001.01 to 16-001.14 are the regulations regarding income under the Modified Adjusted Gross Income (MAGI) program; 477 NAC 29-002.01 is the regulation for income in non-MAGI programs; and 477 NAC 3-007 is the regulation regarding Medicaid renewal. Filing 27-8 at 8 (¶ 32). 477 NAC 29-002.01 states,

> 002.01 METHODOLOGY AND INCOME LIMIT. Eligibility for the Heritage Health Adult program is determined using the modified adjusted gross income (MAGI) methodology. In order to be eligible in the Heritage Health Adult program, an individual must have household income equal to or less than 133% of the Federal Poverty Level (FPL). 477 Nebraska Administrative Code (NAC) 14 through 18 apply to eligibility determinations in the Heritage Health Adult program.

477 NAC 29-002.01 (underlining in original).

Moreover, the April 18, 2024, Notice was not Filyaw's sole source of information about her Medicaid eligibility. Whether through oversight or lack of candor, Filyaw did not inform the Court of any of the other Notices she received about her Medicaid benefits prior to April 18, 2024, and she did not inform the Court of the references to applicable regulations in those Notices. Filyaw had previously been notified that 477 NAC 2-001, sets out "primary eligibility requirements," including "12. Income (see Appendix 477-000-012)." Appendix 477-000-012 in turn shows that 133% of the FPL for the Heritage Health Adult applicable to Filyaw's four-

person household is $3,458. 477 NAC, Appendix 477-000-12. The Court was able to obtain all
the pertinent regulations from ACCESSNebraska.ne.gov.

The April 18, 2024, Notice also complied with 42 C.F.R. § 431.210(d) because it
explained the following under "YOUR RIGHTS" under the subheading "RIGHT TO A
CONFERENCE":

> You have the right to request a conference with DHHS to discuss the reason(s) for
> the action(s) indicated on this form. To request a conference, you may call, write.
> or visit the DHHS office serving your area. A request for a conference will not
> delay or replace any request for a Fair Hearing as noted in the 'Rights to Appeal'
> section on this page. If you have questions about your application, payment.
> services, eligibility, or medical assistance please call DHHS.

Filing 6-1 at 4; Filing 27-6 at 3. Filyaw states that she did call NDHHS three times in May 2024,
albeit not until after the effective date of the termination of her benefits. Filing 8 at 3 (¶¶ 9–10).
Under the subheading "RIGHT TO NOTICE OF ACTION," the April 18, 2024, Notice also
stated,

> You must be given adequate notice of any action(s) affecting your benefits.
> "Adequate" means the notice must include a statement of what action(s) the
> DHHS office intends to take, the reason(s) for the intended action(s), and for
> certain programs, the specific state regulation(s) that require the action(s) to be
> taken. In cases of Intended adverse action (action to terminate, suspend or reduce
> benefits, or to change the manner or form of payment or service to a more
> restrictive method) you must receive adequate and timely notice.

Filing 6-1 at 4; Filing 27-6 at 3. As indicated above, the April 18, 2024, Notice clearly satisfied
these requirements by satisfying 42 C.F.R. § 431.210.

Under "RIGHTS TO APPEAL," the April 18, 2024, Notice also stated in part,

> You have the right to appeal for a hearing on any agency action or inaction on
> your application for receipt of SNAP, block grant services, medical services, or
> financial assistance. You may appeal because your application is denied or is not
> acted on with reasonable promptness, your assistance is suspended, reduced, or
> terminated, your form of payment or service is changed to a more restrictive

method, or because you feel the DHHS office action was taken erroneously. A hearing will not be granted when state or federal law requires automatic case adjustments unless the reason for the appeal is that your eligibility was determined incorrectly.

. . . You (or your representative) have 90 days following the date of this notice to request a fair hearing. **In cases of intended adverse action, where DHHS is required to send you timely and adequate notice, if you request an appeal hearing within ten days following the date on this notice (or in a Medicaid case, before the effective date on this notice), DHHS will not carry out the adverse action until a fair hearing decision is made, unless you request assistance not be continued. This does not apply to situations where DHHS may dispense with timely notice and is only required to have adequate notice. This does not prevent DHHS from continuing other case activities and implementing changes to your assistance case not directly related to the appeal issue**. . . .

Filing 6-1 at 4 (emphasis in the original); Filing 27-6 at 3 (emphasis in the original). Not only does this part of the Notice satisfy 42 C.F.R. § 431.210(d), it satisfies 42 C.F.R. § 431.210(e). The continuation of benefits if an administrative appeal is received before the effective date of termination is required by 477 NAC 10-004 and 422 C.F.R. § 431.230. Filing 27-8 at 8–9 (¶ 33). Filyaw did not file an administrative appeal prior to the effective date of the termination of her Medicaid benefits on May 1, 2024. Filing 27-8 at 8 (¶ 29).[5]

The April 18, 2024, Notice, particularly in the context of all the information provided in all the Notices that Filyaw had received, far more than likely satisfied due process. Thus, Filyaw has correspondingly very little likelihood of success, and this "most significant" *Winter/Dataphase* factor weighs heavily against a TRO. *Wilbur-Ellis Co.*, 2024 WL 2857473, at *2 (internal quotation marks omitted).

---

[5] However, Filyaw is still within her 90-day appeal period, and if her appeal were successful, she would be entitled to benefits retroactive to the date of termination. Filing 6-1 at 4; Filing 27-6 at 3.

2.  *The Threat of Irreparable Harm*

As the Eighth Circuit Court of Appeals has explained, "The second *Winter/Dataphase* factor is the likelihood that a movant will suffer irreparable harm if the court does not grant a preliminary injunction." *Cigna Corp.*, 2024 WL 2839930, at \*5 (citing *Winter*, 555 U.S. at 20; *Dataphase*, 640 F.2d at 114). The Court turns to consideration of this factor starting with a summary of the parties' arguments.

a.  The Parties' Arguments

Filyaw's argument concerning irreparable harm has two prongs. First, she argues that courts in this Circuit have held that restrictions or denials of public assistance to which low-income individuals are entitled constitutes irreparable harm. Filing 5 at 9. She argues that this harm is compounded because the loss of her Medicaid coverage has forced her to forgo or delay critical medical treatment. Filing 5 at 10. Second, she argues that she is irreparably harmed by a deficient notice because she is deprived of the opportunity to identify any mistake in the calculation of her income or otherwise to prepare adequately for a hearing or other challenge to the termination of benefits. Filing 5 at 9. Filyaw argues that Defendants' failure to provide an adequate termination notice seriously harms her by denying her critical information regarding the reason for her proposed termination from Medicaid, without which she cannot determine whether she should appeal a proposed termination, much less prepare for a hearing to defend her eligibility. Filing 5 at 10. She argues further that retroactive monetary damages cannot provide sufficient relief when people are on the economic margin of existence in the first place. Filing 5 at 11.

27

Defendants contend that Filyaw cannot establish irreparable harm. Filing 28 at 10. First, Defendants argue that Filyaw has an adequate remedy at law, because she currently falls within the 90-day window to request a fair hearing. Filing 28 at 11. Indeed, they point out that Filyaw received notice that she had an opportunity to request a fair hearing without the loss of her Medicaid benefits, but she failed to request such a hearing before the effective date for termination of her benefits to maintain her benefits. Filing 28 at 11. Defendants argue that this failure to timely use a legal remedy available to her means that any harm does not rise to the level of irreparable harm. Filing 28 at 11–12.

### b. Requirements to Show Irreparable Harm

The "irreparable harm" factor, like likelihood of success, is a very significant factor in the analysis. Indeed, "[t]he failure of a movant to show irreparable harm is an 'independently sufficient basis upon which to deny a preliminary injunction.'" *Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021) (quoting *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)). As to the meaning of this factor,

> "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). The mere "possibility of irreparable harm" will not suffice. *Winter*, 555 U.S. at 22, 129 S.Ct. 365. "To demonstrate irreparable harm, [the movant] must show harm that is certain and great and of such imminence that there is a clear and present need for equitable relief." *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 951 (8th Cir. 2023) (internal quotation marks omitted).

*Cigna Corp.*, 2024 WL 2839930, at *5. Also, "an unreasonable delay in moving for the injunction can undermine a showing of irreparable harm and 'is a sufficient ground to deny a preliminary injunction.'" *Ng*, 64 F.4th at 997 (quoting *Phyllis Schlafly Revocable Tr. v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019)).

28

c.   Filyaw Has Not Shown Irreparable Harm

Here, the Court concludes that there has been an unreasonable delay in moving for a TRO that completely undermines Filyaw's showing of irreparable harm. *Id.* The Notice of Action notifying her of the termination of her Medicaid benefits is dated April 18, 2024. Filing 6-1 at 2. It states the termination will be effective May 1, 2024. Filing 6-1 at 2. The Notice of Action plainly stated that if Filyaw "request[ed] an appeal hearing . . . before the effective date of this notice [in a Medicaid case], DHHS will not carry out the adverse action until a fair hearing decision is made. . . ." Filing 6-1 at 4; Filing 27-6 at 3. Filyaw's failure timely to seek such a hearing that would have continued her benefits "is a sufficient ground to deny a [TRO]." *Ng*, 64 F.4th at 997 (quoting *Phyllis Schlafly Revocable Tr.*, 924 F.3d 1009).

It is true that the Eighth Circuit Court of Appeals has recognized that harm to an individual from loss of cash and medical assistance benefits may be irreparable,

> We have no doubt that irreparable harm is occurring to the plaintiff class as each month passes without the . . . benefits. . . . Even if retroactive payments *could* be made, . . . the injury would still be irreparable. For people at the economic margin of existence, the loss of [certain benefits] a month and perhaps some medical care cannot be made up by the later entry of a money judgment.

*Chu Drua Cha v. Noot*, 696 F.2d 594, 599 (8th Cir. 1982) (emphasis in the original) (citing *inter alia Goldberg v. Kelly*, 397 U.S. 254, 264 (1970)). However, the potential harm does not overcome Filyaw's forfeiture of a legal remedy by failing to file a timely request for an appeal hearing. *Ng*, 64 F.4th at 997. Equally unavailing is Filyaw's assertion of irreparable harm from the loss of the opportunity to identify any mistake in the calculation of Filyaw's income or otherwise to prepare adequately for a challenge to the termination of benefits because the April 18, 2024, Notice was inadequate. *Elder*, 54 F.4th at 1064 ("Adequate notice is integral to the due

process right to a fair hearing, for the 'right to be heard has little reality or worth unless one is informed.'" (quoting *Bliek*, 102 F.3d at 1475)). Again, the Court concluded above that the Notice was not inadequate, and Filyaw still has the opportunity to seek an administrative appeal.

Thus, this second significant *Winter/Dataphase* factor weighs heavily against a TRO and is a sufficient basis to deny a TRO. *Sessler*, 990 F.3d at 1156.

### 3.   Balance of Interests

"The third *Winter/Dataphase* factor is the balance of equities." *Cigna Corp.*, 2024 WL 2839930, at *6 (citing *Winter*, 555 U.S. at 20; *Dataphase*, 640 F.2d at 114). "The fourth *Winter/Dataphase* factor is the public interest." *Cigna Corp.*, 2024 WL 2839930, at *7 (citing *Winter*, 555 U.S. at 20; *Dataphase*, 640 F.2d at 114). These factors "merge when the Government is the party opposing the preliminary injunction." *Morehouse Enterprises, LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1018 (8th Cir. 2023) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)); *Eggers v. Evnen*, 48 F.4th 561, 564–65 (8th Cir. 2022) ("The balance-of-harms and public-interest factors 'merge when the Government'—or, in this case, a state official in his official capacity—'is the [nonmoving] party.'" (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009), as establishing this principle in the stay context, and *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 295 (2d Cir. 2021), as applying the principle to preliminary injunctions)). The question is whether the balance of these interests "so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* (quoting *Nebraska v. Biden*, 52 F.4th 1044, 1046 (8th Cir. 2022) (per curiam)).

Here, that balance does not favor Filyaw. Filyaw's deprivation of Medicaid benefits while litigating her due process claim is essentially self-inflicted where she failed to meet the

deadline to seek an appeal hearing before the effective date of the termination of benefits. Against that self-inflicted harm, Defendants' interest and the public interest in terminating Medicaid benefits for people who fall outside the state and federal income requirements tips the balance toward Defendants. *See* Filing 27-8 at 12 (¶ 48). Furthermore, if the NDHHS and the MLTC used federal funds to pay for Medicaid services to individuals determined not to have been eligible, MTLC and NDHHS are required to repay those matching funds to the federal treasury. Filing 27-8 at 13 (¶ 50). Thus, the potential for significant financial damage to the NDHHS and the Medicaid program significantly outweigh Filyaw's harm.

### 4.   *The Balance of the Factors Weighs Against Relief*

Ultimately, "the court should balance all the factors in considering whether the injunction should be granted." *Ng*, 64 F.4th at 997. Here, none of the factors weigh in favor a TRO in any form. Thus, Filyaw's Motion for a Temporary Restraining Order must be denied.

### III. CONCLUSION

For the reasons set out above,

IT IS ORDERED that Plaintiff's Motion for Temporary Restraining Order, Filing 4, is denied.

Dated this 20th day of June, 2024.

BY THE COURT:

Brian C. Buescher
United States District Judge