IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| GILLIAN FILYAW, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STEVE CORSI, Chief Executive Officer of the Nebraska Department of Health and Human Services, in his official capacity; and MATT AHERN, Interim Director of the Division of Medicaid and Long-Term Care, in his official capacity,<br><br>Defendants. | 4:24CV3108<br><br><br>MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS |

Plaintiff Gillian Filyaw brought a 42 U.S.C. § 1983 claim against defendants Steve Corsi and Matt Ahern (collectively Defendants) seeking declaratory and injunctive relief for herself and on behalf of a proposed class of Nebraskans enrolled in Medicaid. Filing 1. Filyaw alleges that Defendants deprived her and the proposed class members of due process when Defendants issued notices of action informing certain Medicaid enrollees that their benefits had been terminated. Filing 1 at 12. Defendants moved to dismiss Filyaw's Complaint for lack of subject matter jurisdiction and for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), respectively. Filing 34. For the reasons below, the Court grants Defendants' Motion.

1

## I. INTRODUCTION

### A. Factual Background

The Court considers the following nonconclusory allegations as true for the purposes of ruling on this Motion. *See Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). Following Eighth Circuit Court of Appeals precedent, the Court also considers "materials 'necessarily embraced by the pleadings.'" *LeMay v. Mays*, 18 F.4th 283, 289 (8th Cir. 2021) (quoting *Buckley v. Hennepin Cnty.*, 9 F.4th 757, 760 (8th Cir. 2021), in turn quoting *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015)). This is the appropriate approach for the Court's consideration of both a Rule 12(b)(6) challenge and a "facial" Rule 12(b)(1) challenge. *Pharm. Rsch. & Mfrs. of Am. v. Williams*, 64 F.4th 932, 945 n.7 (8th Cir. 2023) (Rule 12(b)(1) facial challenge standard).

Plaintiff Gillian Filyaw is 23 years old and resides in North Platte, Nebraska, with her husband and two young children. Filing 1 at 3 (¶ 12); Filing 1 at 10 (¶ 54). According to Filyaw, her household income is "low" and often fluctuates based on seasonal demands for her husband's job. Filing 1 at 11 (¶ 55). Filyaw alleges she discovered she was pregnant in October or November of 2020 and enrolled in Nebraska Medicaid coverage. Filing 1 at 11 (¶ 56).

Medicaid is a jointly funded state and federal program that provides medical coverage to certain categories of low-income individuals. Filing 1 at 6 (¶ 30). States are not required to participate in Medicaid but states that choose to participate must comply with federal requirements in order to receive federal funds. Filing 1 at 7 (¶ 32). The Nebraska Department of Health and Human Services (NDHHS) administers Medicaid in Nebraska and determines whether an individual is eligible to receive assistance. Filing 1 at 4 (¶ 15). Defendant Steve Corsi is the Chief

Executive Officer of the NDHHS. Filing 1 at 4 (¶ 13). Defendant Matt Ahern is the Interim Director of the Division of Medicaid and Long-Term Care at the NDHHS. Filing 1 at 4 (¶ 14).

After the NDHHS makes an initial eligibility determination, it reviews an individual's continuing eligibility at least once every 12 months in a process known as a "renewal." Filing 1 at 7 (¶ 34). If the renewal process reveals that a covered individual is no longer eligible for Medicaid the NDHHS must provide the ineligible individual timely and adequate written notice of termination. Filing 1 at 7 (¶ 36). During the COVID-19 pandemic the federal government offered enhanced federal funding to state Medicaid programs on the condition that recipient states kept most Medicaid enrollees "continuously enrolled" in coverage through March 31, 2023, the end of the federally declared COVID-19 public health emergency. Filing 1 at 9–10 (¶¶ 46–48). As a result, the NDHHS paused eligibility renewals during the public health emergency. Filing 1 at 10 (¶ 49). The NDHHS restarted renewals on March 1, 2023, with the "first wave" of terminations taking effect on April 1, 2023. Filing 1 at 10 (¶ 49).

Filyaw alleges she was continuously enrolled in Nebraska Medicaid coverage until her coverage terminated on May 1, 2024. Filing 1 at 11 (¶ 57). On April 18, 2024—thirteen days before her coverage terminated—Filyaw received a notice of action from the NDHHS informing her that a renewal of eligibility had been completed and she had been found ineligible for Medicaid coverage. Filing 1 at 11 (¶ 58); Filing 36-2 at 1. Along with their Brief in support of this Motion, Defendants filed a copy of the April 18, 2024, notice of action (Notice). Filing 36-2. Filyaw alleges the contents of the Notice as part of her Complaint, Filing 1 at 11 (¶ 59), and she concedes the Notice—which she calls an "Income Termination Notice"—is necessarily embraced by the

Complaint, Filing 42 at 3. As a result, the Court will consider the Notice as "materials necessarily embraced by the pleadings." *LeMay*, 18 F.4th at 289.

The Notice states that Filyaw was deemed ineligible for continued Medicaid coverage because her "[i]ncome [e]xceeds [s]tandards." Filing 36-2 at 2. It also explains Filyaw's "right to request a conference with [N]DHHS to discuss the reason(s) for the action(s) indicated" and her "right to appeal for a hearing on any agency action or inaction" on her application. Filing 36-2 at 3. The Notice indicates that Filyaw has "90 days following the date of this notice to request a fair hearing." Filing 36-2 at 3. It also states, "In cases of intended adverse action, where [N]DHHS is required to send you timely and adequate notice, if you request an appeal hearing within ten days following the date on this notice (or in a Medicaid case, before the effective date on this notice), [N]DHHS will not carry out the adverse action until a fair hearing decision is made . . . ." Filing 36-2 at 3. Filyaw alleges that the Notice is identical to notices of action the NDHHS has issued to more than 22,000 Medicaid enrollees since March 1, 2023, in that both Filyaw's Notice and the other 22,000 notices provide "income exceeds standards" as the reason for terminating coverage. Filing 1 at 11 (¶ 61).

Filyaw did not appeal the termination decision and alleges that she has not had health coverage since her Medicaid coverage terminated on May 1, 2024. Filing 1 at 11 (¶ 62). *See also* Filing 42 at 23.

### B.  Procedural Background

On June 11, 2024, Filyaw filed a Complaint in this case on behalf of herself and a proposed class of Nebraskans "who, since March 1, 2023, have been or will be issued a written notice from Defendants proposing to terminate their Nebraska Medicaid eligibility for the reason 'income

4

exceeds standards.'" Filing 1 at 5 (¶ 21). Filyaw sues Defendants in their official capacities pursuant to 42 U.S.C. § 1983 and, in relevant part, asks the Court to

    a)     Certify this action as a class action under Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure with respect to the proposed class identified herein;

    b)     Pursuant to 42 U.S.C. § 1983 declare that the Income Termination Notices used by Defendants do not satisfy the requirements of due process and are therefore unconstitutional;

    c)     Preliminarily and permanently enjoin Defendants from enforcing unconstitutional and unlawful Medicaid terminations per Income Termination Notices by affirmatively ordering that Defendants prospectively reinstate the property interests in Medicaid coverage of Plaintiff and proposed class until Defendants provide the enrollees an adequate termination notice that satisfies the requirements of constitutional due process, including setting forth the specific reasons why termination is proposed;

    d)     Preliminarily and permanently enjoin Defendants from terminating Medicaid coverage for future members of the proposed class without first providing the enrollee a termination notice that satisfies the requirements of due process, including setting forth the specific reasons why termination is proposed;

Filing 1 at 14 –15 (Request for Relief).

Along with her Complaint, Filyaw filed a Motion to Certify Class, Filing 9, and a Motion for Temporary Restraining Order, Filing 4. Filyaw sought a Temporary Restraining Order that would in relevant part

    1)     Order the Defendants to cease enforcement of the unlawful and unconstitutional termination of Plaintiff's Medicaid eligibility by prospectively reinstating her in Medicaid coverage until such time that the Defendants provide her with an adequate termination notice that comports with constitutional due process or until a hearing on Plaintiff's forthcoming motion for a preliminary injunction may take place.

Filing 4 at 4 (Request for Relief).

On June 20, 2024, the Court denied Filyaw's Motion for Temporary Restraining Order. Filing 30. In its Order denying the Motion for Temporary Restraining Order, the Court examined the likelihood that Filyaw's claim would succeed on the merits and determined that success was unlikely in part because Filyaw sought retroactive or retrospective relief against official-capacity Defendants protected by sovereign immunity. Filing 30 at 19. The Court also concluded that the several notices regarding her Medicaid rights that "Filyaw had received, far more than likely satisfied due process." Filing 30 at 26. On July 1, 2024, Defendants filed a Motion to Dismiss Complaint, Filing 34, as well as a Motion to Stay Proceedings for Certification of Class, Filing 35. Magistrate Judge DeLuca granted the Motion to Stay on July 18, 2024, after Filyaw did not oppose it. Filing 41 (Text Order). In their Motion to Dismiss, Defendants challenge Filyaw's Complaint for lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a plausible claim under Rule 12(b)(6). Filing 34. Defendants' Motion to Dismiss is now before the Court.[1]

## II. LEGAL ANALYSIS

### A. Preliminary Considerations

The Court begins by acknowledging that on July 18, 2024, Magistrate Judge DeLuca stayed Filyaw's Motion to Certify Class pending further order of the Court. Filing 41 (Text Order). However, the Court will first address Defendants' Motion to Dismiss because the Motion challenges the Court's subject matter jurisdiction and "[w]ithout jurisdiction, the court cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation marks omitted) (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)). "[W]hen

---

[1] Filyaw requests oral argument on Defendants' Motion to Dismiss. Filing 43. Exercising its discretion pursuant to NECivR 7.1(e), the Court denies Filyaw's Motion for Oral Argument on Defendants' Motion to Dismiss Complaint. NECivR 7.1(e) ("In general the court does not allow oral argument or evidentiary hearings on motions.").

[jurisdiction] ceases to exist, the only function remaining to the [C]ourt is that of announcing the fact and dismissing the cause." *Id.* (internal quotation marks omitted) (quoting same).

Although Filyaw's Complaint raises claims on her behalf and on behalf of a proposed class, "for the purpose of the [M]otion to [D]ismiss, only [Filyaw's] claim[], and not those of any potential class members, are considered." *Hudock v. LG Elecs. U.S.A., Inc.*, 2017 WL 1157098, *3 (D. Minn. Mar. 27, 2017). This course is appropriate "because [Defendants'] [M]otion to [D]ismiss addresses the [C]ourt's subject matter jurisdiction." *Does v. Univ. of Washington*, 2016 WL 5792693, *3 (W.D. Wash. Oct. 4, 2016). *See also Hannibal-Fisher v. Grand Canyon Univ.*, 523 F.Supp.3d 1087, 1093 (D. Ariz. Mar. 5, 2021) ("Courts 'generally consider only the claims of a named plaintiff in ruling on a motion to dismiss a class action complaint prior to class certification.'" (quoting *Barth v. Firestone Tire & Rubber Co.*, 673 F.Supp. 1466, 1475 (N.D. Cal. Sept. 1, 1987))). Thus, in ruling on Defendants' Motion to Dismiss for lack of subject matter jurisdiction, the Court's analysis is limited to Filyaw's claim and the Court will not consider the claims of her proposed class. For the reasons discussed below, the Court does not have subject matter jurisdiction over Filyaw's claim. As a result, Filyaw's Motion to Certify Class is denied as moot.

### B. The Challenge to Subject Matter Jurisdiction

Defendants' Motion to Dismiss is for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and for failure to state a claim pursuant to Rule 12(b)(6). Because the Court does not have subject matter jurisdiction over Filyaw's claims, as discussed below, the Court does not need to determine whether Filyaw failed to state a claim pursuant to Rule 12(b)(6). *See Sianis v. Jensen*, 294 F.3d 994, 997 (8th Cir. 2002) ("Subject matter jurisdiction is a threshold matter that [courts]

are obligated to address at the outset."). Accordingly, the Court addresses only the parties' arguments regarding the Rule 12(b)(1) challenge and does not consider the questions raised by the parties about abstention or the merits of Filyaw's claim.

   1. *Rule 12(b)(1) Standards*

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for a pre-answer motion to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The Eighth Circuit Court of Appeals has explained that on a Rule 12(b)(1) motion,

> The plaintiff bears "the burden of proving the existence of subject matter jurisdiction," and we may look at materials "outside the pleadings" in conducting our review. [*Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (en banc)] (quoting *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005)). Because of the "unique nature of the jurisdictional question," *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990) (citation omitted), it is the court's duty to "decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue," *id*. at 730. As such, if the court's inquiry extends beyond the pleadings, it is not necessary to apply Rule 56 summary judgment standards. *Id*. at 729. Rather, the court may receive evidence via "any rational mode of inquiry," and the parties may "request an evidentiary hearing." *Id*. at 730 (quoting *Crawford v. United States*, 796 F.2d 924, 928 (7th Cir. 1986)). Ultimately, the court must rule upon "the jurisdictional issue [unless it] is 'so bound up with the merits that a full trial on the merits may be necessary to resolve the issue.'" *Id*. (quoting *Crawford*, 796 F.2d at 928).

*Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019); *Am. Fam. Mut. Ins. Co. v. Vein Ctrs. for Excellence, Inc*., 912 F.3d 1076, 1081 (8th Cir. 2019) ("[A] motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) raises a factual challenge to the court's jurisdiction, and courts may look to evidence outside the pleadings and make factual findings." (citing *Davis v. Anthony, Inc*., 886 F.3d 674, 679 (8th Cir. 2018)).

The *Buckler* decision suggests that a challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) is always "factual," but "facial" challenges are also possible:

8

> In deciding a motion under Rule 12(b)(1), the district court must distinguish between a facial attack—where it looks only to the face of the pleadings—and a factual attack—where it may consider matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir.1990). In a factual attack, the "non-moving party does not have the benefit of 12(b)(6) safeguards." *Id.* If the jurisdictional issue is "bound up" with the merits of the case, the district court may "decide whether to evaluate the evidence under the summary judgment standard." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir.2018). This court is bound by the district court's characterization of the Rule 12(b)(1) motion. *Carlsen v. GameStop, Inc*., 833 F.3d 903, 908 (8th Cir.2016) ("The method in which the district court resolves a Rule 12(b)(1) motion—that is, whether the district court treats the motion as a facial attack or a factual attack—obliges us to follow the same approach.").

*Croyle by & through Croyle v. United States*, 908 F.3d 377, 380–81 (8th Cir. 2018). When a challenge to subject matter jurisdiction is "facial," the plaintiff is entitled to Rule 12(b)(6) "safeguards" that require the Court to "accept 'the facts alleged in the complaint as true and draw[] all reasonable inferences in favor of the nonmovant.'" *Bauer v. AGA Serv. Co.*, 25 F.4th 587, 589 (8th Cir. 2022) (quoting *Pietoso, Inc. v. Republic Servs., Inc.*, 4 F.4th 620, 622 (8th Cir. 2021)). In applying the Rule 12(b)(6) "safeguards" to a "facial" challenge, the Court "can consider documents 'necessarily embraced by the complaint,' including 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" *Rossi v. Arch Ins. Co.*, 60 F.4th 1189, 1193 (8th Cir. 2023) (quoting *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017)).

In this case, Defendants do not designate their Rule 12(b)(1) challenge as "factual" or "facial." *See generally* Filing 37; Filing 44. Filyaw asserts that "Defendants present a facial attack" to subject matter jurisdiction, Filing 42 at 3, and Defendants do not refute this assertion in their Reply. *See generally* Filing 44. Defendants did introduce evidence outside the record when they submitted alongside their opening Brief an index containing an affidavit of defendant Matt Ahern,

9

Filing 36-1, and the April 18, 2024, Notice to Filyaw, Filing 36-2. However, Defendants do not rely on this evidence to support their Rule 12(b)(1) argument. Filing 37 at 7–9. In any event, Filyaw concedes that the Notice is necessarily embraced by the Complaint and suggests the Court's Rule 12(b)(1) "inquiry should be limited to the [C]omplaint and the necessarily embraced [N]otice." Filing 42 at 12, 3. The Court concludes that the challenge here is "facial" because neither party asks the Court to consider materials beyond the Complaint and the necessarily embraced Notice on the Rule 12(b)(1) part of the Motion. Under these circumstances, Filyaw is entitled to Rule 12(b)(6) "safeguards." *Croyle*, 908 F.3d at 380.

   2. *Eleventh Amendment Sovereign Immunity*

      a. The Parties' Arguments

Defendants argue that the Eleventh Amendment doctrine of sovereign immunity bars Filyaw's claim against them and strips the Court of subject matter jurisdiction in this case. Filing 37 at 7. Defendants acknowledge that *Ex parte Young*, 209 U.S. 123 (1908), provides a limited exception to a state's general immunity from suit by permitting lawsuits against state officials in their official capacity when the relief sought is both equitable and prospective. Filing 37 at 7. However, Defendants contend that *Ex parte Young* does not apply to Filyaw's claim because Filyaw waited to file this suit until after the termination of her benefits took effect. Filing 37 at 8–9.

Defendants argue that Filyaw's requested permanent equitable relief—an order from the Court requiring Defendants to reenroll Filyaw and other potential class members into Medicaid coverage until adequate notice is given—does not fall within the *Ex parte Young* exception because it would impermissibly obligate Defendants "to spend Nebraska Medicaid funds reimbursing

[Filyaw] and her desired class for medical expenses incurred during the interim period between Medicaid terminations based on allegedly insufficient notice and the judgment on [sic] this Court." Filing 37 at 9. Defendants then assert that Filyaw's requested declaratory relief is "purely retrospective in nature," arguing that a declaration of the constitutionality of Defendants' "income exceeds standards" notices of action would deal with "wholly past conduct" as Filyaw's Medicaid coverage is already terminated. Filing 37 at 9. According to Defendants, sovereign immunity bars Filyaw's entire suit. Filing 37 at 8.

Filyaw, on the other hand, argues that her request for "prospective reinstatement" of Medicaid coverage falls within the *Ex parte Young* exception. Filing 42 at 4–5. Filyaw denies that she is seeking damages or monetary relief, such as the retroactive payment of past medical expenses. Filing 42 at 5. Instead, Filyaw contends that her requested relief "would prospectively restore [Filyaw] and the proposed class to their pre-termination standing, until they receive a constitutionally sufficient notice." Filing 42 at 7. According to Filyaw, "[t]his type of forward-looking, prospective reinstatement is appropriate even if it has an ancillary effect on the state treasury by requiring the state to provide Medicaid coverage in the future." Filing 42 at 7. In Filyaw's view, prospective reinstatement would address "an ongoing violation of federal law" allegedly committed each time Defendants have issued or will issue a notice of Medicaid termination based on the reason "income exceeds standards." Filing 42 at 10.

In reply, Defendants distinguish Filyaw's claim from the claims of her proposed class. Filing 44 at 1. Defendants concede that it may be possible to prospectively apply Filyaw's requested injunctive and declaratory relief to proposed class members whose Medicaid coverage has not yet been terminated. Filing 44 at 2. However, Defendants argue that because Filyaw's

11

coverage is already terminated she "cannot rely on the possible claims of speculative proposed class members to cure this defect in her personal claim." Filing 44 at 2–3. As discussed above, the Court considers only Filyaw's claim—not the claims of any proposed class members—in ruling on Defendants' Rule 12(b)(1) challenge. *See Hudock*, 2017 WL 1157098 at *3. Thus, the Court must determine whether the Eleventh Amendment bars Filyaw's claim.

### b. Applicable Standards

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." *Church v. Missouri*, 913 F.3d 736, 742 (8th Cir. 2019) (internal quotation marks omitted) (quoting *Virginia Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253 (2011)). "The Eleventh Amendment is 'one particular exemplification of that immunity.'" *Id.* (quoting *Fed. Mar. Comm'n v. South Carolina State Ports Auth.*, 535 U.S. 743, 753 (2002)). Although the language of the Eleventh Amendment "expressly encompasses only suits brought against a State by citizens of another State," the Supreme Court "long ago held that the Amendment bars suits against a State by citizens of that same State as well." *Papasan v. Allain*, 478 U.S. 265, 276 (1986). As a result, "[b]ecause of the Eleventh Amendment, States may not be sued in federal court unless they consent to it in unequivocal terms or unless Congress, pursuant to a valid exercise of power, unequivocally expresses its intent to abrogate the immunity." *Green v. Mansour*, 474 U.S. 64, 68 (1985).

In *Ex parte Young*, 209 U.S. 123 (1908), however, the Supreme Court established an "exception to Eleventh Amendment immunity." *Johnson v. Griffin*, 69 F.4th 506, 512 (8th Cir. 2023). Under the *Ex parte Young* doctrine, "a private party may sue state officials in their official capacities for prospective injunctive relief." *Id.* (internal quotation marks omitted) (quoting *McDaniel v. Precythe*, 897 F.3d 946, 951–52 (8th Cir. 2018)). In other words, "sovereign

immunity does not bar certain suits seeking declaratory and injunctive relief against state officers in their official capacities based on ongoing violations of federal law." *Elder v. Gillespie*, 54 F.4th 1055, 1062 (8th Cir. 2022) (internal quotation marks omitted) (quoting *Kodiak Oil & Gas (USA) Inc. v. Burr*, 932 F.3d 1125, 1131 (8th Cir. 2019), in turn quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997)). However, the *Ex parte Young* "exception is narrow: It applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993) (internal citations omitted).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 911 (8th Cir. 2022) (internal quotation marks omitted) (quoting *Stewart*, 563 U.S. at 255). "For Eleventh Amendment purposes, the line between permitted and prohibited suits will often be indistinct"; however, courts discern "on which side of the line a particular case falls" by "look[ing] to the substance rather than to the form of the relief sought." *Papasan*, 478 U.S. at 278.

    c. The Court Lacks Subject Matter Jurisdiction Over Filyaw's
      Claim Under *Ex Parte Young*

As discussed above, in addressing the threshold question of subject matter jurisdiction the Court considers only whether Filyaw's § 1983 claim against Defendants is barred by sovereign immunity. *See Hudock*, 2017 WL 1157098 at *3. "Section 1983 does not override Eleventh Amendment immunity." *Hadley v. N. Arkansas Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir.

1996). As a result, the Eleventh Amendment will bar Filyaw's claim against Defendants—state officials sued in their official capacities—unless her claim falls under *Ex parte Young*. *See Stewart, 563 U.S. at 254* (determining that "absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State" unless the suit falls within the "limited" *Ex parte Young* doctrine). To determine *Ex parte Young*'s applicability in this case, the Court conducts a "straightforward inquiry" into whether Filyaw's Complaint and the necessarily embraced Notice "allege[] an ongoing violation of federal law and seek[] relief properly characterized as prospective." *Courthouse News*, 48 F.4th at 911. Under this "straightforward inquiry," the Court concludes that Filyaw's claim does not meet *Ex parte Young*'s requirements and is instead barred by sovereign immunity.

        i. Filyaw Fails *Ex Parte Young*'s First Requirement Because She Does Not Allege an Ongoing Violation of Federal Law

Filyaw does not satisfy the first *Ex parte Young* prong because she fails to allege an ongoing violation of federal law. Filyaw alleges Defendants deprived her of due process when they issued the Notice informing her that she is ineligible for Medicaid coverage because her "income exceeds standards." Filing 1 at 12 (¶ 66). Filyaw specifically takes issue with this "income exceeds standards" language, alleging that it creates a "risk of erroneous deprivation" of her property interest in Medicaid benefits and "fail[s] to provide timely, adequate notice of the basis for" the NDHHS's decision. Filing 1 at 12 (¶¶ 65–66). Although allegations of a due process violation can bring a suit within the *Ex parte Young* exception, *see Elder*, 54 F.4th at 1061–63, the alleged violation must be ongoing to warrant *Ex parte Young* protection from dismissal, *Courthouse News, 48 F.4th at 911*. Filyaw contends that she has alleged an ongoing violation of due process and she

points the Court to *Elder v. Gillespie*, 54 F.4th 1055 (8th Cir. 2022), as proof that her suit should fall under *Ex parte Young*. Filing 42 at 9–10. The Court is not persuaded.

In *Elder*, the Eighth Circuit held that the plaintiffs—beneficiaries of Arkansas Medicaid services—could sue state officials under *Ex parte Young* in part because the plaintiffs properly alleged an ongoing violation of due process. *Elder*, 54 F.4th at 1062–63. Like Filyaw here, the *Elder* plaintiffs' eligibility for Medicaid benefits was reassessed at least annually by the state agency overseeing Medicaid. *Id.* at 1059. After one such reassessment the plaintiffs received notices of action informing them that their Medicaid benefits were to be reduced or terminated. *Id.* Like the Notice in Filyaw's case, the *Elder* notices of action stated that a timely appeal would prevent the agency from reducing or terminating the plaintiffs' benefits until after a hearing took place. *Id.* Unlike Filyaw, however, the *Elder* plaintiffs timely appealed the agency decision. *Id.* From this point on, Filyaw's circumstances diverge significantly from those of the *Elder* plaintiffs.

Though the Notice explains Filyaw's right to appeal the NDHHS's termination decision—including her right to maintain her benefits until the outcome of a fair hearing if she appealed before the termination took effect on May 1, 2024—as of July 29, 2024, Filyaw admittedly had "not filed an administrative appeal of her Medicaid termination." Filing 42 at 23. As a result, when Filyaw filed her Complaint on June 11, 2024, her coverage was already terminated, and she had not been entitled to Medicaid benefits for over a month. Filing 36-2 at 1. She is still not entitled to Medicaid benefits today. Filing 1 at 11 (¶ 62). The *Elder* plaintiffs, on the other hand, did timely appeal the state agency's eligibility decision meaning they were each entitled to maintain their benefits until the outcome of a fair hearing. *Elder*, 54 F.4th at 1059. Despite this timely appeal, the agency "mistakenly" reduced or terminated the plaintiffs' benefits before a hearing could occur.

15

*Id.* at 1060. Although the agency reinstated the plaintiffs' benefits upon notification of the error, the plaintiffs still sued state officers in their official capacities alleging the officers had violated the plaintiffs' right to due process and seeking among other things a declaratory judgment and a permanent injunction. *Id.* Because the *Elder* plaintiffs had timely appealed the eligibility decision, they were still entitled to Medicaid services at the time they filed their suit against the defendants. *Id.* at 1062. This is not Filyaw's reality.

Moreover, because the *Elder* plaintiffs were still active Medicaid beneficiaries they remained subject to annual reassessment of their eligibility. *Elder*, 54 F.4th at 1062. As the Eighth Circuit noted, the plaintiffs had alleged that the state agency had "no plans to switch to a different assessment tool, allocation methodology, or notice of action than those" used during the premature reduction or termination of the plaintiffs' benefits. *Id.* "[B]arring a change in the state's operation of the program or judicial intervention," the *Elder* plaintiffs—current Medicaid beneficiaries—risked experiencing again the "very harm alleged." *Id.* The Eighth Circuit determined that under these circumstances the plaintiffs were "presently suffering from a violation of federal law" and thus fell within the *Ex parte Young* exception. *Id.* at 1062–63. Filyaw's circumstances are markedly different. Because Filyaw's entitlement to Medicaid coverage ended on May 1, 2024, she is no longer subject to the NDHHS's renewal process, and she is also not at risk of being erroneously deprived of Medicaid coverage. Simply put, Filyaw has no Medicaid benefits to lose. Thus, any alleged "risk of erroneous deprivation of Medicaid coverage" by Defendants, or any alleged failure by Defendants "to provide timely, adequate notice" of the basis for terminating Filyaw's benefits had already occurred by the time Filyaw filed her Complaint. Filing 1 at 12 (¶ 66).

Filyaw's allegation that Defendants violated her due process rights in the past is inconsistent with *Ex parte Young*'s "focus on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past." *Papasan*, 478 U.S. at 277–78. "Although [Defendants'] earlier actions [of providing allegedly improper notice] may have present effect [on Filyaw], that does not mean that they are ongoing." *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023). Indeed, even under *Ex parte Young*'s "straightforward inquiry," "[t]he lingering effects of [Defendants'] past action do not convert it into an ongoing violation." *Id.* Because Filyaw fails to allege that she is "presently suffering from a violation of federal law," her claim against Defendants does not fall within the *Ex parte Young* exception to sovereign immunity. *Elder*, 54 F.4th at 1062.

### ii. Filyaw Fails *Ex Parte Young*'s Second Requirement Because She Does Not Seek Prospective Relief

Filyaw also fails to satisfy the second *Ex parte Young* prong because the relief she seeks cannot be properly characterized as prospective. The Court has made clear that it considers only the relief Filyaw seeks on her own behalf, not the relief she requests for her proposed class. *See Hudock*, 2017 WL 1157098 at *3. Specifically, Filyaw seeks a declaration that the Notice used by Defendants violated the requirements of due process and is therefore unconstitutional. Filing 1 at 14. She also asks the Court to order Defendants to prospectively reinstate her property interest in Medicaid coverage until "adequate termination notice" is provided. Filing 1 at 14. Although Filyaw seeks equitable relief, her requested relief must be both equitable and prospective to fall within the *Ex parte Young* exception. *See Courthouse News*, 48 F.4th at 911 (concluding that the plaintiff's case "checks all the *Ex parte Young* boxes" because the plaintiff alleges ongoing

17

violations of federal law and "seeks only prospective relief, not damages: declaratory and injunctive relief from two state officials").

The Court first addresses Filyaw's request for an injunction prospectively reinstating her Medicaid coverage. By using the phrase "prospective reinstatement," Filyaw styles her requested injunctive relief as "forward-looking." Filing 42 at 7. However, the Court examines the substance of Filyaw's requested relief rather than its form. *See Papasan*, 478 U.S. at 278–79. Defendants argue that Filyaw's desired injunctive relief is "retroactive and retrospective in nature because it requires the repayment of [Filyaw's] past medical expenditures that occurred after her termination from Medicaid." Filing 37 at 1–2. Filyaw counters that her request for reinstatement is truly prospective because it would "only provide such Medicaid coverage from the time [an] order was entered until Defendants cure their constitutional violation by providing adequate notices." Filing 42 at 5–6. Filyaw acknowledges that the Eleventh Amendment bars "retroactive monetary damages" but contends that she is seeking restoration to her "pre-termination standing," not "retroactive payment of damages." Filing 42 at 5, 7. According to Filyaw, an order prospectively reinstating her Medicaid benefits would only have an "ancillary effect on the state treasury by requiring the state to provide Medicaid coverage in the future." Filing 42 at 7.

Filyaw is correct that under *Ex parte Young*, the Eleventh Amendment does not bar relief that is equitable "even though accompanied by a substantial ancillary effect on the state treasury." *Papasan*, 478 U.S. at 278. However, such relief must "serve[] directly to bring an end to a present violation of federal law" to escape the Eleventh Amendment bar. *Id.* "Relief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred even when the state official is the named defendant." *Id.*

18

The Court has already determined that Filyaw's Complaint fails to allege an ongoing violation of federal law since she is not entitled to Medicaid benefits. "Because there is no continuing violation of federal law to enjoin in this case, an injunction is not available." *Green*, 474 U.S. at 71. "By seeking an injunction to cure past injuries—[Defendants' alleged failure to provide Filyaw with adequate termination notice]—[Filyaw] asks for a reparative injunction. Such an injunction cannot be fairly characterized as prospective." *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023).

Because Filyaw fails to allege an ongoing violation of federal law, her desired declaratory relief also cannot be properly characterized as prospective under *Ex parte Young*. Filyaw's request for a declaration that Defendants violated her due process rights is "fundamentally retrospective because it does not relate to an ongoing violation of [her] federal rights; instead, it pertains to [the May 2024] termination" of her Medicaid coverage. *Corn v. Mississippi Dep't of Pub. Safety*, 954 F.3d 268, 276 (5th Cir. 2020). *Ex parte Young* "does not permit judgments against state officers declaring that they violated federal law in the past." *Puerto Rico Aqueduct*, 506 U.S. at 146. Thus, Filyaw fails to satisfy both *Ex Parte Young* requirements and her claim is barred by sovereign immunity.

### III. CONCLUSION

For these reasons, the Court lacks subject matter jurisdiction over the claims contained in Filyaw's Complaint, Filing 1. After a "straightforward inquiry," the Court finds that Filyaw neither alleges an ongoing violation of federal law nor seeks relief properly characterized as prospective. As a result, Filyaw's claim does not fall within the *Ex parte Young* exception to sovereign immunity and the Eleventh Amendment bars Filyaw's suit against Defendants. Accordingly,

IT IS ORDERED:

1. Plaintiff Gillian Filyaw's Motion for Oral Argument, Filing 43, is denied;

2. Defendants Steve Corsi and Matt Ahern's Motion to Dismiss, Filing 34, is granted; and

3. Plaintiff Gillian Filyaw's Motion to Certify Class, Filing 9, is denied as moot.

Dated this 9th day of September, 2024.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge